## WHITESIDES v. BARBER.

In action for recovery of an interest in land, the jury found a verdict for the interest claimed and also for plaintiff's proportion of the net amount of rents and profits received by the defendant, which were stated in the verdict; the Circuit judge then passed an order directing the cause to be transferred to Calendar 2, that the plaintiff have leave to apply for judgment thereon, and that defendant have leave to set up any proper equities, and for this purpose may perfect his pleadings by amendment or otherwise. From this order defendant appealed. *Held*, that there being nothing but a verdict and an administrative order in the case, this court could not entertain the appeal.

Before FRASER, J., York, November, 1883.

The case is sufficiently stated in the opinion of this court for a proper understanding of the ruling made.

*Messrs. John P. Gage* and *Hart & Hart*, for appellant.

*Mr. W. B. Wilson, Jr.*, contra.

November 20, 1884. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Thomas Whitesides had a life estate in a small tract of land, 210 1-5 acres, with limitation over to his three sons, James, John, and Austin Whitesides. During his life all of the three sons died intestate and without issue, leaving as their heirs at law the said Thomas Whitesides, their father, and two sisters, Mrs. Margaret Dunlap and Mary Whitesides. Mrs. Dunlap died in 1862, intestate, leaving as her heirs at law her husband, Thomas N. Dunlap, and two children, Missouri and B. T. Dunlap, the plaintiff. Mary Whitesides died in 1863, unmarried and intestate, leaving as her heirs at law her father, the said Thomas Whitesides, and niece, the said Missouri Dunlap, and her nephew, the said B. T. Dunlap. Missouri intermarried with one James M. Smith, and died childless and intestate, leaving as her heirs at law her said husband (Smith) and her father, Thomas N. Dunlap, and her brother, B. T. Dunlap.

In 1876 the father, Thomas Whitesides, the life tenant, died seized and possessed of the different interests which he had inherited as before stated, amounting in the aggregate to two-thirds of the said tract of land, which he held as tenant in common with his grandson, B. T. Dunlap, and with T. N. Dunlap and James M. Smith, in unequal shares. The said Thomas Whitesides left a widow, Jane M. Whitesides, and she, with the said B. T. Dunlap, his grandson, were his heirs at law as to his undivided interest in the land.

When the plaintiff, B. T. Dunlap, arrived of full age, he found the land in possession of one Ferguson H. Barber, claiming it as his own; and he instituted this action against the said Barber for the recovery of his interest therein, including that as heir at law of his grandfather, Thomas Whitesides, as well as his own interest as tenant in common. Pending the action, the plaintiff, B. T. Dunlap, died, and his sole executor and devisee, Thomas W. Whitesides, was by order substituted in his place. The said Barber answered, claiming that he purchased the land at a sale ordered by the Probate Court of York County, which was conveyed to him by the sheriff who made the sale on January 17, 1877.

It appeared that Thomas Whitesides left debts, but that no will had been proved or administration granted on his estate, or an account taken of his personalty; that a creditor filed a petition in the Probate Court of York County, *J. H. Clawson, assignee,* v. *Jane M. Whitesides et al.*, alleging that the personal property of the deceased debtor was not sufficient for the payment of his debts, and praying that the interest of the deceased (two-thirds) in the said tract of land should be sold in aid of the personalty, and the assets marshalled. The heirs at law of the deceased, as well as his co-tenants, were made parties, but as there was neither executor nor administrator, his personal representative of course was not a party.

While this proceeding was pending, Jane M. Whitesides, the widow, filed her petition in the nature of a cross-bill for partition and dower in her late husband's portion. In this action, which was entitled *Jane M. Whitesides* v. *B. T. Dunlap et al.*, Missouri and B. T. Dunlap, the plaintiff, were minors, and, as it was sup-

posed, were made parties by *accepting service of summons.*
Being over fourteen years of age, they indicated the defendant,
F. H. Barber, as their guardian *ad litem*, who was appointed
and consented to the proceeding.   From this time forward the
orders of the probate judge were made in both cases, united and
stated together in the caption.

On September 22, 1876, the probate judge ordered the whole
tract of land sold; but in December thereafter he issued another
order, staying the sale "until the further order of the court," and
issued a writ of partition to divide the land.   The commissioners
recommended that the land (with small exception, unnecessary to
state here) should be sold and the proceeds divided, and this
return was simply marked "approved and confirmed," without
repeating the express order of sale, which had been "stayed."
The land was sold by Glenn, sheriff of the county, and the
defendant Barber became the purchaser for $715, which he paid,
and received sheriff's titles, January 17, 1877.   The judge of
probate paid the proceeds of sale to the costs, the widow's dower,
and the few debts of the deceased, Thomas Whitesides, and set
down for the plaintiff what was termed his share; but he refused
to receive it, and, as before stated, when he came of age brought
this action for his *part of the land.*

The cause came on to be heard before Judge Fraser, and the
jury found a special verdict as follows: "We find that the plain-
tiff is entitled to the possession of 65–144 of the land in dispute,
of which 41–144 in his own right, and 24–144 as heir of Thomas
Whitesides.   We find that the net value of the rents and profits,
after deducting taxes and other expenses and value of timber
used, to be $1,750.04; and that the plaintiff is entitled to the
same, in the same proportion and in the same right as to the
land."   Upon receiving this verdict, the Circuit judge made the
following order: "The jury having rendered a special verdict
against the defendant, Ferguson H. Barber: It is ordered, that
the case be transferred to calendar No. 2; that the plaintiff have
leave to apply for judgment thereon; that the defendant, Fergu-
son H. Barber, have leave to set up in the cause such equities
as he may properly do in this action, and that for this purpose
he may apply for leave to perfect his pleadings, either by amend-

4

ment or otherwise, as he may be advised, and as may be proper in the case."

From this order the defendant Barber appealed and filed numerous exceptions, which it is unnecessary to set out, as from the view taken we have no jurisdiction to entertain the appeal. This court has the right to review upon appeal only final judgments and such intermediate judgments, orders, and decrees as involve the merits. There is nothing in this case but a special verdict and an administrative order. From the verdict of a jury no appeal lies to this court. *State* v. *Rankin*, 3 *S. C.*, 438; *Sloan* v. *Westfield*, 11 *S. C.*, 445; *First National Bank of Charleston*, v. *Gary*, 14 *S. C.*, 571.

There was no final judgment. Indeed, no judgment could be entered on the verdict, for the reason that the Circuit judge ordered that "the case be transferred to calendar No. 2, and that the plaintiff have leave to *apply for* judgment thereon." Section 286 of the code provides that "upon receiving a verdict the clerk shall make an entry in the minutes, &c., &c. If a different direction be not given by the court, the clerk must enter judgment in conformity with the verdict." Here "a different direction" was given by the court, and it may turn out that when the equities are heard on calendar 2, the plaintiff may not recover judgment at all.

The judgment of this court is that the appeal be dismissed, without prejudice, for the want of jurisdiction to entertain it at this stage of the proceedings.